NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued March 6, 2013
Decided June 27, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-3514

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Eastern District of |
| | Wisconsin. |
| *v.* | |
| | No. 11-CR-15 |
| FAIRLEIGH A. JONES, | |
| *Defendant-Appellant*. | Rudolph T. Randa, |
| | *Judge*. |

**O R D E R**

Until the time came for sentencing, Fairleigh Jones's prosecution for unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) proceeded uneventfully. He was convicted by a jury after a two-day trial, and his sentencing was scheduled for October 26, 2011. He wound up with a sentence of 120 months' imprisonment, three years of supervised release, and a $100 special assessment. In this appeal, he asserts that the district court made three errors that affected his sentence – two in calculating his guidelines range, and one in applying the factors set forth in 18 U.S.C. § 3553(a). The government concedes that the court misapplied § 3553(a) and overstated Jones's base offense level by four. Jones also argues that the court erred in applying a four-level upward adjustment based on a finding that Jones had transferred the gun in connection with "another felony offense." We agree with

the government that the court erred in the two respects it has identified and was correct on the final point. We thus vacate the sentence and remand for resentencing, still applying the latter four-level upward adjustment.

**I**

Police officers in Racine, Wisconsin, arrested Jones, a felon, after he sold a handgun to a police informant during a sting operation. Jones was charged with violating 18 U.S.C. § 922(g)(1), and he soon concluded that his best course of action was to cooperate with the government. To that end, he proffered a confession to the firearms charge along with information on several unsolved crimes, including homicides. Despite these efforts, he and the prosecutors were unable to reach a plea agreement, and Jones ultimately opted for a jury trial. There he was found guilty based on the informant's testimony, the testimony of law enforcement officers, and an audio and video recording of the gun sale. (The proffer was not introduced because Jones did not testify.)

After the trial, a probation officer calculated Jones's imprisonment range under the sentencing guidelines. Believing that Jones met the threshold under U.S.S.G. § 2K2.1(a)(2) of at least two felony convictions for a crime of violence or a drug crime, the probation officer assigned Jones a base offense level of 24. In support of this recommendation, the officer pointed to Jones's 2001 conviction for distribution of a lookalike substance and his 1995 conviction for aggravated discharge of a firearm. Next, the probation officer added four offense levels under § 2K2.1(b)(6) (now § 2K2.1(b)(6)(B)) on the theory that Jones had "transferred [the gun] with . . . reason to believe that it would be used or possessed in connection with another felony offense," *i.e.*, possession by the informant, who had revealed to Jones his status as a felon before the transaction was complete. The last two levels were added under § 2K2.1(b)(4)(A) because the gun was stolen. Jones's total offense level of 30, combined with his criminal history category of VI, yielded a guidelines imprisonment range of 168 to 210 months, but his offense carried a statutory maximum of ten years, making ten years the advisory sentence. See U.S.S.G. § 5G1.1(a).

The lawyer who represented Jones at sentencing (and now represents him on appeal) offered little resistance to the probation officer's guidelines calculations. He did argue, however, that Jones's offense level should be reduced for acceptance of responsibility, and he urged that 18 U.S.C. § 3553(a) called for a below-guidelines sentence because Jones had assisted the government by providing information about other crimes. For its part, the government cited Jones's incorrigibility and his sale of the gun to a known felon as reasons to impose the statutory maximum.

The district judge adopted the probation officer's guidelines calculations from the presentence report and echoed the government's concern about Jones' incorrigibility, adding that the gun sold to the informant had been stolen in a residential burglary not long

before the sale. But the judge suggested that he might have given Jones credit under U.S.S.G. § 3E1.1 for acceptance of responsibility if doing so would have lowered the imprisonment range below the statutory maximum. Similarly, the judge floated the possibility that Jones's criminal history category of VI overstates the seriousness of his conduct (his post-2003 offenses were fairly minor) but concluded that settling this question would be pointless. Moving down to category V and giving Jones full credit for acceptance of responsibility still would not produce an imprisonment range below the statutory maximum. (A criminal history category of V and a total offense level of 27 yields a range of 120 to 150 months.) The judge also acknowledged that the information Jones provided to the government about unsolved crimes might lead to other prosecutions, but he explained that "[t]he Government has to make a motion before the Court—before I can consider any type of assistance that you've rendered to the Government."  The judge then sentenced Jones to the statutory maximum prison term of ten years.

Jones filed a notice of appeal. His appointed attorney initially believed the appeal to be frivolous and sought to withdraw under *Anders v. California*, 386 U.S. 738 (1967). We denied that motion, however, and ordered briefing on the issues surrounding Jones's sentencing. See *United States v. Jones*, No. 11-3514, Doc. 15 (Aug. 15, 2012).

## II

*A. Jones's assistance to the government*

Jones begins by arguing that the district court was wrong to conclude that it was not authorized to reflect his assistance to the government in the sentence without a § 5K1.1 motion from the prosecutor. He is right. Jones was not asking for a sentence below the applicable statutory minimum, so the court was free to consider his assistance, with or without a motion, when applying the § 3553(a) factors. See 18 U.S.C. § 3553(a)(1); *United States v. Leiskunas*, 656 F.3d 732, 737 (7th Cir. 2011); *United States v. Knox*, 573 F.3d 441, 453 (7th Cir. 2009). The government's only response is that the district judge may have meant to convey that the absence of a motion kept Jones from being rewarded directly under U.S.S.G. § 5K1.1 for his cooperation. In the abstract, the latter proposition is correct. See *id.* § 1B1.1(b),(c); *United States v. Guyton*, 636 F.3d 316, 319 n.2 (7th Cir. 2011). The government also speculates that the judge might have been considering Jones's assistance when he raised the possibility of credit for acceptance of responsibility.

What matters, however, is not speculation but what the transcript reveals. The government concedes, and we agree with it, that the judge said that without a motion from the government, he could not consider Jones's cooperation even under § 3553(a). The transcript shows the judge telling Jones that his "best hope" for a shorter sentence is "to provide information to authorities along the lines that you've already given" in hopes of securing a motion under Federal Rule of Criminal Procedure 35(b) for a sentence reduction.

The judge also stated that no consideration of the assistance Jones already had given was possible unless the government filed an appropriate motion. We agree with Jones that the judge's apparent misunderstanding of his authority to consider Jones's assistance may have resulted in the imposition of a longer sentence.

### B. Jones's base offense level

Jones next argues that the district judge should not have counted his 1995 conviction for aggravated discharge of a firearm when selecting a base offense level. That conviction, Jones correctly points out,  did not qualify for criminal history points and thus, according to the commentary to § 2K2.1(a)(2), it could not be used to increase his offense level. See *id.* § 2K2.1 cmt. n.10; *United States v. Armijo*, 651 F.3d 1226, 1237–38 (10th Cir. 2011); *United States v. Damon*, 595 F.3d 395, 400 (1st Cir. 2010). The conviction did not support points for two reasons: Jones was a minor at the time of the offense, see U.S.S.G. § 4A1.2(d), and he was given a sentence of less than one year, see *id.* § 4A1.2(e).

Although Jones did not object before or during sentencing to the court's mistaken selection of 24 as his base offense level, the government concedes that the mistake constituted plain error, meaning that it was obvious, affected Jones's substantial rights, and impugned the "fairness, integrity, or public reputation of the judicial proceedings." See *United States v. Joshua*, 648 F.3d 547, 552–53 (7th Cir. 2011) (quotation marks and citation omitted). Once again, we come to the same conclusion. The guidelines commentary unambiguously states that the court is to "use only those felony convictions that receive criminal history points" when computing an offense level under (among others) § 2K2.1(a)(2). See  U.S.S.G. § 2K2.1 cmt. n.10. Since Jones has just one qualifying conviction, the correct base offense level is 20, *id.* § 2K2.1(a)(4)(A), not 24, which requires two prior felony convictions. *Id.* § 2K2.1(a)(2). If the court's selection of the higher offense level had been the only error in the sentencing, it might have been harmless. Although the error raised Jones's calculated guidelines range of 120 to 150 months to 168 to 210 months, the statutory maximum was at all times 120 months (10 years), making 120 months his recommended sentence under the guidelines, see U.S.S.G. § 5G1.1(a). But this error did not stand alone; when combined with the misapplication of 18 U.S.C. § 3553(a) in this case, these four offense levels become consequential.

### C. Application of U.S.S.G. § 2K2.1(b)(6)

Finally, Jones argues that U.S.S.G. § 2K2.1(b)(6) (now § 2K2.1(b)(6)(B)) was not applicable to him. That guideline calls for the addition of four offense levels when a defendant who is being sentenced for a firearms offense possessed or transferred a firearm with "reason to believe that it would be used or possessed in connection with another felony offense." The phrase "in connection with" means that the firearm "facilitated, or had

the potential of facilitating, another felony offense." *Id.* cmt. n. 14(A). The basis for applying this guideline to Jones was that he transferred the gun with reason to believe that the informant, by accepting it, would himself commit the crime of possession of a firearm by a felon. Jones contends that this application of § 2K2.1(b)(6) was plainly erroneous because this court held in *United States v. Mahalick*, 498 F.3d 475 (7th Cir. 2007), that the other felony offense "cannot simply be that the buyer was a felon and upon purchasing the gun became a felon in possession of a firearm." *Id.* at 480. This statement in *Mahalick* was supported by a citation to the then-current application note, which defined "another felony offense" as follows:

> As used in subsections (b)(5) [now (b)(6)] and (c)(1), "another felony offense" and "another offense" refer to offenses *other than explosives or firearms possession or trafficking offenses*. However, where the defendant used or possessed a firearm or explosive to facilitate anther firearms or explosives offense (*e.g.,* the defendant used or possessed a firearm to protect the delivery of an unlawful shipment of explosives), an upward departure under § 5K2.6 (Weapons and Dangerous Instrumentalities) may be warranted.

U.S.S.G. § 2K2.1 cmt. n. 15 (2005) (emphasis added); see *Mahalick*, 498 F.3d at 480. The definition, which was added in 1992 to "clarif[y] the meaning of 'another felony offense,'" see U.S.S.G. app. C, amend. 471, was understood to create a categorical exclusion for firearms and explosives offenses. See *United States v. Valenzuela*, 495 F.3d 1127, 1133–34 (9th Cir. 2007); *United States v. Harper*, 466 F.3d 634, 650 (8th Cir. 2006); *United States v. Lloyd*, 361 F.3d 197, 200–01 (3d Cir. 2004); *United States v. Boumelhem*, 339 F.3d 414, 427–28 (6th Cir. 2003); *United States v. Garnett*, 243 F.3d 824, 827–28 (4th Cir. 2001).

The government counters that the district judge was right to apply § 2K2.1(b)(6) despite *Mahalick* because that application note was amended the year after Mahalick's sentencing. The amended note, which is now numbered 14(C), reads:

> "Another felony offense", for purposes of subsection (b)(6), means any federal, state, or local offense, other than *the* explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained.

U.S.S.G. § 2K2.1 cmt. n.14(C) (emphasis added). The amended commentary adds the definite article "the" to the definition; it places the statement about departing upward when the other offense is a firearms or explosive offense in a separate note, Note 14(D). The government sees the addition of "the" as a signal that the phrase "another felony offense" means *any* felony other than the one for which the defendant is being sentenced. This is the conclusion the Fifth Circuit reached in 2010 when it upheld the application of § 2K2.1(b)(6) in a case where the defendant, who was convicted of illegally purchasing firearms, also had

illegally transported the guns out of the United States. See *United States v. Juarez*, 626 F.3d 246, 255 (5th Cir. 2010). Reviewing for plain error, the *Juarez* court explained that the addition of "the" means that "another felony offense" excludes "only the possession or trafficking offense that serves as the basis for the defendant's conviction." *Id.* To our knowledge, no other court has considered this question. Because Jones did not raise this issue in the district court, we too review for plain error.

The Sentencing Commission has never explained why it added "the" to the definition, see U.S.S.G. supp. app. C, amend. 691, but like the Fifth Circuit we conclude that the addition was meant to end the categorical exclusion of firearms and explosives offenses from the definition of "another felony offense." Our decision in *Mahalick*, which interprets the older version of the commentary, is out of date and does not control here.

We recognize that our conclusion about the meaning of § 2K2.1(b)(6) leads to at least one odd result. Under the preceding subsection, § 2K2.1(b)(5), a four-level upward adjustment applies if the defendant engaged in firearms "trafficking" in connection with the firearms offense of conviction, and trafficking is defined as selling at least two firearms to someone whose possession would be unlawful or who intends to use the firearms unlawfully. U.S.S.G. § 2K2.1 cmt. n. 13(A). Under the understanding of § 2K2.1(b)(6) we adopt today, a defendant who (like Jones) sold just one gun and thus did not qualify for an adjustment under § 2K2.1(b)(5), nonetheless would qualify for precisely the same adjustment under § 2K2.1(b)(6). This result may not be what the Commission intended, but we leave it to that body to decide whether to alter either or both of these upward adjustments.

### III

When the proper base offense level is selected, Jones's total offense level drops from 30 to 26. This offense level, combined with his criminal history category of VI, results in an imprisonment range of 120 to 150 months. If on remand the judge also were to give Jones a two-level downward adjustment for acceptance of responsibility (three levels would not be possible because Jones went to trial), his range would be 100 to 125 months. And Jones's final sentence could be lower still if the judge were to exercise his discretion under 18 U.S.C. § 3553(a) in light of the information Jones provided about other crimes. These possibilities easily show that Jones's substantial rights were violated by the errors we have identified, see generally *Peugh v. United States*, No. 12-62, 2013 WL 2459523 *5 (U.S. June 10, 2013), and that he is entitled to a sentence based on a properly calculated guideline range and full consideration of the § 3553(a) factors.

Jones's sentence is **VACATED** and the case is **REMANDED** to the district court for resentencing.