In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 22-2538

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEMETRIUS HARVEY,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cr-00482-1 — **Virginia M. Kendall**, *Judge.*

———————————

ARGUED MAY 31, 2023 — DECIDED FEBRUARY 8, 2024

———————————

Before ROVNER, HAMILTON, and SCUDDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Demetrius Harvey pled guilty, in
conjunction with a plea agreement, to a charge of knowingly
possessing a firearm after having previously been convicted
of a crime punishable by a term of imprisonment exceeding
one year, in violation of 18 U.S.C. §§ 922(a)(1)(A) and (g)(1).
In the plea agreement, Harvey acknowledged that he sold
three firearms in a series of three transactions to a confidential
source ("CS") who, unbeknownst to Harvey, was working for

the government. He also acknowledged, "for the purpose of computing his sentence under the Sentencing Guidelines," to engaging in a firearm sale on February 12, 2018, as follows:

> On February 12, 2018, at approximately 9:54 a.m., defendant exited his residence in Dolton, Illinois and entered the front passenger seat of the CS's vehicle. Inside the CS's car, defendant sold the CS a Rohm GMBH Model RG-10 .22 caliber revolver bearing serial number 665735 (the "Rohm firearm") and three live rounds of .22 caliber ammunition in exchange for $250. The CS asked defendant about defendant's friend who had a gun card, indicating that the CS wanted the defendant's friend to straw purchase firearms. Defendant said that, if they straw purchased firearms, the defendant would have to charge the CS more money. The CS said, "It don't matter, I'm a felon, I can't get those motherfuckers." Defendant replied "And, I'm a hitter. I got throwaways, everything I got, got murders on them motherfuckers damn near that's why I hurry up and get them bitches out my hand. If I don't need them. If I ain't at war with nobody, ain't no need to have them motherfuckers bro."

Plea Agreement, Doc. 98 at 4.

In Harvey's initial sentencing for that offense, the Probation Office determined that a 4-level enhancement was proper under USSG § 2K2.1(b)(5) because Harvey transferred two or more firearms to a person for whom possession was unlawful —here, because that person was a felon. On appeal, Harvey

argued that while the evidence showed the transfer of two or more firearms, it was insufficient to support the enhancement because the purchaser (a confidential source) did not tell the defendant that he was a felon until the third firearm sale, and therefore there was insufficient evidence to show that he was willing to sell to a prohibited person for at least two of the firearms. We remanded for resentencing as to that enhancement because the parties and the court had failed to recognize that the defendant had to have knowledge that the purchaser's felony was for a crime of violence or a controlled substance offense. *United States v. Harvey*, 2022 WL 887577 (7th Cir. 2022). On resentencing, an updated Presentence Report (PSR) was prepared which did not impose that enhancement, but the government argued that the PSR should have included an alternative 4-level enhancement, under USSG § 2K2.1(b)(6), based on Harvey's transfer of a firearm to a person he had reason to believe was a felon. Under that provision, a defendant's offense level is increased by four levels if he "possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." USSG § 2K2.1(b)(6)(B). In *United States v. Jackson*, 741 F.3d 861, 863 (7th Cir. 2014), we recognized that the requirements of § 2K2.1(b)(6) are satisfied and the enhancement applies "when a defendant guilty of being a felon-in-possession has transferred the firearm to another prohibited person." The updated PSR did not recommend that enhancement because it concluded that the § 2K2.1(b)(6)(B) enhancement required evidence of defendant's knowledge that the purchaser would use the gun for a felony offense *other than* merely a felon-in-possession offense—an argument adopted by no one on

appeal and inconsistent with our decision in *Jackson*, 741 F.3d at 863.

In the court below, Harvey's counsel objected to the enhancement, arguing that the purchaser's statement that he was a convicted felon was an insufficient basis for Harvey to conclude that the purchaser was in fact a convicted felon for purposes of the enhancement. His counsel noted that there are circumstances in which someone's right to purchase a firearm might be restored, and based on that possibility argued that Harvey should not be expected to believe the purchaser was a convicted felon. The court sought to clarify the argument by Harvey in the following colloquy:

> **Court:** So, it's your opinion that because someone could be restored, that that conversation would not be enough to put him on notice that the man he was selling to was a convicted felon? Is that your position?
>
> **[Defense counsel]**: It is, Judge. I mean, as we sit here now, **I don't know if this confidential source was a convicted felon or not. I appreciate it, and we acknowledged in the plea agreement that he told Mr. Harvey that he was. So I don't think we are disputing that basic fact.** I just don't think that the inference can be drawn from that fact alone. I think there needs to be something more.

[emphasis added] Sentencing Transcript, Doc. 13 at 8. Defense counsel further discussed the conversation in the vehicle at the time of the firearm transaction, arguing that there was a

suggestion that the fees would be higher if he was a convicted felon, but that no renegotiation of the fees then ensued.

The district court applied the 4-level enhancement, and Harvey now appeals that determination. On appeal, however, Harvey argues against imposition of the enhancement on a different factual ground. For the first time, Harvey argues that he was not told that the confidential source was a felon until the transaction was complete. This is a departure from his argument below. In that challenge, defense counsel acknowledged that Harvey was told that the confidential source was a convicted felon, but instead argued that "when all we have is a statement by somebody that he can't possess a firearm, I don't think Mr. Harvey should be expected to necessarily believe that." Sentencing Transcript, Doc. 13 at 7–8. Defense counsel maintained that Harvey would not necessarily believe that the purchaser was a convicted felon or could believe that the purchaser's right to possess a firearm had been restored.

"'We review *de novo* whether the factual findings of the district court adequately support the imposition of the enhancement.'" *United States v. Barker*, 80 F.4th 827, 834 (7th Cir. 2023), quoting *United States v. Brown*, 843 F.3d 738, 742 (7th Cir. 2016). The factual findings underlying that enhancement, however, are reviewed for clear error. *Id*. The government argues that plain error review applies because the argument was not made below, but citing our decision in *United States v. Billups*, 536 F.3d 574, 578 (7th Cir. 2008), Harvey argues that he challenged the enhancement below and that a new twist on a challenge on appeal does not trigger plain error scrutiny. In the court below and on appeal, defense counsel argued that the facts were insufficient to support the enhancement, but

the focus of that challenge differed in each instance. In the district court, defense counsel conceded that Harvey was informed that the purchaser was a convicted felon and argued that Harvey would not necessarily believe that, whereas on appeal, defense counsel asserts that the information as to the convicted felon status was conveyed after the purchase had concluded. The timing of the disclosure of the convicted felon status was neither explicitly conceded nor challenged in the arguments against the enhancement in the court below.

We need not pause to consider whether plain error review applies, however, because the standard of review is irrelevant to the outcome of the appeal here. Even under the less onerous standard, Harvey's claim cannot succeed. The enhancement was proper if the evidence before the district court supported the determination that the transfer of the firearm by the defendant occurred "with knowledge, intent, or reason to believe that it would be used or possessed in connection with" the felon-in-possession offense. In the plea agreement, Harvey admitted that he entered the car to complete the transaction, and that the CS had a conversation in that vehicle in which he declared his status as a felon. Harvey maintains, however, that the plea agreement established that he was not informed that the confidential source was a felon until *after* the sale. But the language of the plea agreement does not support that characterization, because that language does not contain any language establishing the timing at all. For instance, it does not state that the sale of the firearm took place, and that the purchaser revealed he was a convicted felon "after that sale," "following the transaction", "subsequently," or any other denotation of timing. The plea agreement merely relates the actions and conversations that occurred in the vehicle; the agreement notes that he sold the gun inside the

vehicle, and sets forth a discussion that occurred in the vehicle relating that the purchaser was a felon. The mere order of the sentences does not establish the timing. Imagine for instance, if the first sentence declared that "inside the CS's car, defendant sold the CS a … revolver," and the second sentence stated "the CS examined the revolver and found it acceptable and handed the cash to Harvey in an envelope." No one would argue that the transaction was completed before the actions in the second sentence relating to that transaction occurred. Instead, the second sentence clearly provides details as to how the transaction proceeded. The mere order of the sentences alone, absent clarifying language, does not establish whether the actions were simultaneous or sequential. Harvey can point to no language establishing that the placement of the sentences was meant to convey sequential actions, rather than to describe generally all of the actions that occurred during the time in the vehicle. Absent words relating to timing indicating that the conversation regarding his felon status occurred *following* the transaction, the language establishes only that both the sale and the conversation occurred in the vehicle before Harvey exited it—which is the clearest point at which the sale would have concluded.

At best, then, the plea agreement is ambiguous as to the timing issue. But the initial PSR in this case provided clearer language as to the timing, stating that on February 12, 2018, the defendant sold the revolver and three rounds of live ammunition to the CS for $250, and then stating that "during this transaction," the CS asked about the friend who had a gun card and the potential for a straw purchase, and that "during the exchange," the confidential source stated that he was a felon which prevented him from legally purchasing firearms. Harvey did not raise any objection to that characterization of

the facts in either sentencing hearing, which clarifies the timeline. Nothing in that characterization conflicts with the language in the plea agreement, and in fact it was consistent with the characterization of the facts made by counsel in arguments to the district court in the sentencing proceedings below. Therefore, Harvey cannot rely upon that plea agreement to establish a contrary timeline. The district court could properly rely on the explicit timeline set forth in the initial PSR—which was updated, not superseded, by the subsequent one—and was never challenged by Harvey. Therefore, under any standard of review, the district court did not err in imposing the enhancement based on the defendant's knowledge of recipient's felon status.

The decision of the district court is AFFIRMED.